STEVEN M. TINDALL (SBN 187862)
RUKIN HYLAND DORIA & TINDALL LLP
100 Pine Street, Suite 725
San Francisco, CA  94111
Telephone: (415) 421-1800
Facsimile: (415) 421-1700
steventindall@rhdtlaw.com

ELLYN MOSCOWITZ (State Bar No. 129287)
LAW OFFICES OF ELLYN MOSCOWITZ
1629 Telegraph Ave, Fourth Floor
Oakland, California 94612
Telephone:  (510) 567-8400
Facsimile:  (510) 567-8444
emoscowitz@moscowitzlaw.com

Attorneys for Individual and Representative Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD LEE and STEVEN TAYLOR, individually and on behalf of all others similarly situated, | CASE NO. 3:07-cv-04956-SI |
| Plaintiffs, | CLASS ACTION |
| vs. | NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| CONAM INSPECTION AND ENGINEERING SERVICES, INC, | |
| Defendant. | **Date:**  October 3, 2008<br>**Time:**  9:00 a.m.<br>**Courtroom:**  10<br>**Judge:**    Hon. Susan Illston |

## TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION ...........................1

    RELIEF SOUGHT.................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ........................1

MOTION FOR CLASS CERTIFICATION...............................................................................1

    I.     Issue to be Decided ...........................................................................................1

    II.    SUMMARY OF THE ARGUMENT.................................................................2

    III.   Factual and Procedural Background ...............................................................4

        A.    Conam's Employees and Worksites ......................................................4

        B.    Plaintiffs' Work for Conam ...................................................................6

        C.    Conam Employees Assigned in a Particular Location Worked an
            Alternative Workweek Schedule...........................................................7

        D.    Conam Failed to Conduct Valid AWS Elections
            Prior to June 2008.................................................................................7

        E.    Conam Conducted AWS Elections in June 2008.................................9

        F.    Conam's Uniform Meal Period Policy.................................................10

        G.    Proposed Class Members' Time Records Confirm that they were
            not Paid Overtime and Did not Receive Second Meal Periods..........10

        H.    Conam's Payroll Processes were Uniform Throughout
            the Class Period....................................................................................11

        I.    Procedural History...............................................................................11

    IV    Class Certification is Appropriate Here.............................................................12

        A.    Class Certification Requirements.........................................................12

        B.    Plaintiffs Meets Each of Rule 23(a)'s Requirements ...........................14

            1.    The Proposed Class and Subclass are Sufficiently
                Numerous ...................................................................................14

            2.    Common Issues of Fact and Law Are Present ...........................14

            3.    Plaintiffs have Claims Typical of the Class and Subclass ........15

            4.    Plaintiffs Will Fairly and Adequately Represent the
                 Class and Subclass ....................................................................17

i

C.    Plaintiffs Satisfy Rule 23(b)(3)'s Requirements ...................................18

    1.    Common Questions Predominate Over Individual Ones .........18

    2.    A Class Action is Superior to Other Available Means of
Resolving this Controversy .........................................................22

V.    CONCLUSION ........................................................................................23

MO    MOTION FOR CLASS CERTIFICATION; MEMO OF Ps & As IN SUPPORT THEREOF

1

**TABLE OF CASES & AUTHORITIES**

2

3  **CASES**

4  *Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998) ........................................................14

5  *Armsrong v. Davis*, 275 F.3d 849 (9ᵗʰ Cir. 2001).....................................................................16

6  *Bates v. United Parcel Service*, 204 F.R.D. 440 (N.D. Cal. 2001) (Henderson, J.) ......................16

7  *Bell v. Farmers Ins. Exchange,* 115 Cal. App. 4ᵗʰ 715 (2004).....................................................22

8  *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473 (2ⁿᵈ Cir. 1995)...............................14

9  *Cummins v. Connell,* 316 F.3d 886, 895 (9ᵗʰ Cir. 2003)...............................................................13

10  *Eisenburg v. Gagnon,* 766 F.2d 770 (3ʳᵈ Cir. 1985) ......................................................................15

11  *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147 (1982)......................................................13

12  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9ᵗʰ Cir. 1998).......................................................14, 19

13  *Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9ᵗʰ Cir. 1992).................................................16, 19

14  *Hawkins v. Comparet-Cassani,* 251 F. 3d 1230 (9ᵗʰ Cir. 2001)....................................................13

15  *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*
       691 F.2d 1342 (9ᵗʰ Cir. 1982) .................................................................................................13

16

17  *Jordan v. Los Angeles County,* 669 F.2d (9ᵗʰ Cir. 1982)................................................................14

     *Krzesniak v. Cendant Corp.* 2007 WL 1795703 .........................................................................22

18

19  *In re Citric Acid Antitrust Litig.,* 1996 WL 655791 (N.D. Cal. 1996) (Smith, J.)........................14

20  *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507 (9ᵗʰ Cir. 1978).......................................17

     *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006)..................................17

21

22  *Schwartz v. Harp,* 108 F.R.D. 279 (C.D. Cal. 1985) ....................................................................16

23  *Tierno v. Rite Aid Corp.,* 2006 WL 2533056 (N.D. Cal. 2006) (Henderson, J.) .....................14, 18

24  *Valentino v. Carter-Wallace, Inc.,* 97 F.3d (9ᵗʰ Cir. 1996)..........................................................22

25  *Vizena v. Union Pac. RR Co.,* 360 F.3d 496 (5ᵗʰ Cir. 2004) ........................................................13

26  *Whiteway v. FedEx Kinkos Office and Print Services,* 2006 WL 2642528 (N.D.
       Cal. 2006) (Armstrong, J.) ...............................................................................................13, 14

27  *Wiegele v. FedEx Ground Package Sys., Inc.* WL 410691 11(S.D. Cal
     2008).....................22

28  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180 (9ᵗʰ Cir. 2001)...........................................12

MO      MOTION FOR CLASS CERTIFICATION; MEMO OF Ps & As IN SUPPORT THEREOF

1

**RULES**

Federal Rule 23(a) ...........................................................................................3,  18, i

Labor Code and Wage Order 16 .......................................................................7, 8, 20

Rule 23(b)(3) ...............................................................................................2, 4, 18, 19,

**FEDERAL PRACTICE AND PROCEDURE**

Fed.R.Civ.P. 23 .........................................................................................................2

MO          MOTION FOR CLASS CERTIFICATION; MEMO OF Ps & As IN SUPPORT THEREOF

1    <u>**NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**</u>

2    **TO DEFENDANT AND ITS COUNSEL OF RECORD:**

3    PLEASE TAKE NOTICE that on October 3, 2008 at 9:00 a.m., or as soon thereafter as

4    the matter may be heard in Courtroom 10 of the United States District Court for the Northern

5    District of California, located at 450 Golden Gate Avenue, 15th Floor, San Francisco, CA 94102,

6    Plaintiffs Gerald Lee and Steve Taylor will move—and hereby do move—for class certification

7    pursuant to Federal Rule of Civil Procedure 23. Plaintiffs' motion is based on this Notice of

8    Motion and Motion, the Memorandum of Points and Authorities that appears below, the

9    Declaration of Steven Tindall in Support of Class Certification (filed herewith), the Declaration

10   of Ellyn Moscowitz in Support of Class Certification (filed herewith), the Declaration of Steven

11   Tindall Attaching Declarations of Conam Employees (filed herewith), the papers and pleadings

12   on file in this action, and on such other evidence as may be presented at the motion hearing.

13   <u>**RELIEF SOUGHT**</u>

14   Plaintiffs seek an order certifying this matter as a class action on behalf of (1) a Class of

15   all persons who worked in California for Conam Inspection and Engineering Services, Inc., as a

16   non-exempt employee in an inspection or testing occupation at any time from September 25, 2003

17   until the present; and (2) a Subclass of these employees who were, at any time during the Class

18   Period, assigned to a particular work location.

19
20   <u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
     MOTION FOR CLASS CERTIFICATION**</u>

21   **I.    <u>Issue to be Decided</u>**

22   The issue before the Court is whether Plaintiffs have met the requirements of Federal Rule

23   23(a) and Rule 23(b)(3) such that certification of the following Class and Subclass is appropriate:

24   (1) a Class of all persons who worked for Conam Inspection and Engineering Services, Inc., in

25   California as non-exempt employees in an inspection or testing occupation at any time from

26   September 25, 2003 until the present, and (2) a Subclass of these inspection and testing

27   employees who were assigned to a particular work location.

28   ///

-1-

## II.    SUMMARY OF THE ARGUMENT

For the entire proposed Class Period—September 25, 2003 until the present—Defendant Conam Inspection and Engineering Services, Inc. ("Conam") has had a uniform policy of (1) not providing a second meal period to its California non-exempt employees who work in inspection and testing occupations when these employees work more than ten hours in a day; and (2) requiring employees who were assigned to a particular work location to work more than eight hours in a day without paying them overtime for the 9th and 10th hours worked in a day.

First, the employee manual in effect during the entire Class Period does not specifically provide for a second meal period after employees have worked more than ten hours in a day and does not inform employees of their right to a second meal period. Although employees' time records uniformly reflect that they took one half-hour meal period, they virtually never show that employees took a second half-hour meal period when they worked more than ten hours in a day. Nearly two dozen current and former employees confirm in declaration testimony that, like Plaintiffs Lee and Taylor, they were never informed of their rights to a second meal period, and they never took a second meal period when they worked more than ten hours in a day.[1]

Second, members of a substantial subclass of these Conam employees—numbering well over 100—were all subjected to an unlawful overtime policy. Employees who, at any time during the Class Period, were assigned by Conam to a worksite run by a Conam customer (such as the BP Carson Refinery, the Exxon Mobil Refinery in Torrance, or the Shell Martinez Refinery) were required to work an Alternative Workweek Schedule (or "AWS") of more than eight hours of work per day, without being paid overtime for the ninth and tenth hours of work as required by California law. Such a work schedule can be legal if—but only if—the employer conducts AWS elections that comply with the California Labor Code's requirements at its worksites. Throughout the Class Period until mid-June of 2008 (at the earliest), Conam had no valid AWS election in place at *any* of its worksites, because it had conducted either an invalid AWS election or no

---

[1] Declarations of current and former Conam employees obtained by Plaintiffs are attached as Exhibits A through W to the Declaration of Steven M. Tindall Attaching Declarations of Conam Employees ("Tindall Employee Decl.").

-2

1    election at all.  In either instance, Conam owes overtime pay for the ninth and tenth hours worked

2    in a day by the proposed Subclass Members.

3        The proposed Class and Subclass each meet all of the requirements for class certification

4    under Rule 23(a):

5   • **Numerosity:**  Both the Class and Subclass are sufficiently numerous—
6     including more than 100 current and former Conam employees in each.

7   • **Commonality:**  There are factual and legal issues common to both the Class
      and Subclass—namely, whether Conam's uniform second meal period policy
8     is lawful under California law and whether Conam held valid AWS elections
      that remained effective during the Class Period.
9

10  • **Typicality:**  The claims of Plaintiffs Lee and Taylor are typical of the claims
      of the Class and Subclass:  like the Class and Subclass, Plaintiffs have claims
11    for missed second meal periods, for unpaid overtime pay, for waiting time
      penalties, and for itemized wage statement penalties.  Plaintiffs' wage-and-
12    hour claims arise out of the same set of facts as those of all of Conam's
      inspection and testing employees who worked in California.
13

14  • **Adequacy:**  Plaintiffs are adequate Class Representatives because they have
      no interests adverse to the Class and Subclass, they are committed to
15    litigating the case aggressively on behalf of their fellow current and former
      Conam employees, and they have hired counsel experienced in wage-and-
16    hour employment class action litigation such as this.

17       Moreover, as required under Rule 23(b)(3), the legal and factual questions common to the

18   Class and Subclass predominate over any individual issues that may arise.  At a class trial, the

19   Court and jury can determine whether Conam's second meal period policy was lawful—that is,

20   whether failing to inform employees of their right to a second meal period and taking no steps to

21   address the situation despite knowledge that none of its employees took second meal periods

22   amounts to a failure to provide meal periods under the California Labor Code.  The Court and

23   jury can also determine whether Conam conducted valid AWS elections that would excuse

24   Conam from paying overtime to the Subclass for the ninth and tenth hours of work in a day.

25   These issues do not require individual adjudications as to any Class or Subclass member.

26       As such, certification of the Class and Subclass is appropriate.

27       ///

28       ///

-3-

## III.  Factual and Procedural Background

### A.  Conam's Employees and Worksites

Conam provides onsite testing and inspection services for oil refineries, petrochemical plants, and power plants throughout California. *See* Complaint at ¶ 7.  Conam employs inspectors, testing technicians, and testing assistants to perform these services on site at these oil refineries, chemical plants, and power plants, which are owned and operated by Conam's customers. *See id., see also,* Declaration of Steven M. Tindall in Support of Class Certification ("Tindall Decl."), Exhibit I (transcript of Deposition of Gerald Lee ("Lee Depo.")), 11:22-13:10 ; Exhibit J (transcript of Deposition of Steve Taylor ("Taylor Depo.")), 13:16-14:7.  Throughout the proposed Class Period of September 25, 2003 to the present, Conam has assigned its inspection and testing employees in one of two ways:  employees are either assigned a "call-out schedule," where their hours and workplace can vary during the week and from week to week depending on the needs of Conam's customers, or assigned to work at a particular location on an ongoing basis, in which case their hours and workplace are generally set.  Tindall Decl., Ex. B (Transcript of Deposition of Dennis Bertolotti ("Bertolotti Depo.")), 70:8-16.

When Conam has inspection and testing employees assigned to a worksite, Conam also has a Conam representative or "lead person" assigned to that worksite, with whom the Conam employees confer. *Id.* at 25:6-26:7.  During the proposed Class Period, Conam inspection and testing employees and lead persons were assigned to the following worksites:  the BP facility in Carson California (known as "BP Carson"), a Shell refinery in Martinez, California (known as "Shell Martinez," and previously known as the "Martinez Refining Company," or "MRC"), the ExxonMobil refinery in Torrance, California, two ConocoPhillips facilities, a Valero Refinery in Benicia, California, a Valero Refinery in Wilmington, California, and a Dow Chemical plant in Benicia. *Id.* at 27:9-28:11; *see* Declaration of Ellyn Moscowitz in Support of Class Certification ("Moscowitz Decl."), ¶ 5.

Conam inspection and testing employees also worked on a call-out basis at other oil refineries, chemical plants, boiler plants, pipelines, and power plants throughout California. *See* Bertolotti Depo., 34:5-35:8; 36:7-24; Lee Depo., 30:7-22; Taylor Depo., 41:3-11.  When Conam

-4-

1   inspection and testing employees are not assigned to a worksite but are scheduled out daily on a

2   call-out schedule, they confer with one of two Conam field supervisors (who are based at Conam

3   facilities in Signal Hill and Benicia, California) to determine their schedule for the week.

4   Bertolotti Depo., 26:8-19. The system by which testing and inspection employees are either

5   assigned to a particular location or to a call-out schedule has been in place for the entire proposed

6   Class Period. *Id.*, 26:20-27:1.

7       The total number of employees who have worked in testing and inspection positions for

8   Conam in California during the Class Period is likely in the hundreds. Conam has admitted that it

9   has employed more than 50 people in testing and inspection positions in California *at all times*

10  since September 25, 2003. Tindall Decl., ¶ 9 and Ex. K, p.4. Given the turnover in positions, the

11  actual number of proposed Class Members is many more. A review of the partial set of time

12  records produced by Conam thus far in the litigation reveals that well over 175 people worked for

13  Conam in inspection and testing occupations during the Class Period,[2] including 120 of these

14  who worked AWS schedules at facilities such as BP Carson, MRC, Exxon Mobil, and Valero.

15  Tindall Decl., ¶ 11. As such, the evidence indicates that during the Class period, well over 100

16  Conam inspection and testing employees were assigned to particular worksites.[3]

17      The number of inspection and testing employees assigned to particular facilities at any one

18  time fluctuated: it decreased during slower times and more than doubled during refinery

19  "shutdowns"—that is, when a refinery shuts down its usual operations so that maintenance and

20  [2] This figure is supported by other evidence. By agreement of the parties, a third-party

21  administrator sent out notices to all former, and one-third of all current, Conam employees who worked in California during the Class Period, informing them that Plaintiffs' counsel had

22  requested their contact information. *See* Tindall Decl., ¶ 16. The third-party administrator sent out notices to 131 current and former Conam employees. *Id.* Moreover, Mr. Bertolotti testified

23  that in 2003, approximately 35 to 40 employees worked out of Conam's office in Benicia, and an additional 40 to 50 worked out of Conam's office in Signal Hill. Bertolotti Depo., 23:3-23.

24  These numbers increased by 2008: approximately 50 employees currently work out of the Benicia office, with an additional 90 employees in the Signal Hill office (though the Signal Hill

25  number has swelled to 150 due to an acquisition in approximately May of 2008). *Id.*, 22:16-25,

26  23:17-19. Mr. Bertolotti confirmed further that all but about sixteen of these approximately 140 current employees are working as inspectors. *Id.* 24:3-13.

27  [3] *See also* Section III(D), below, indicating that 109 total Conam employees who were assigned to

28  California facilities in California voted in AWS elections in June 2008.

-5-

1    repair work can take place. *See* Bertolotti Depo., 112:25-113:23 (100 additional Conam

2    employees added to the BP Carson worksite during a shutdown); Lee Depo., 54:15-18 (an

3    additional 30 to 40 employees added during a shutdown); Taylor Depo., 49:11-50:12 (Conam

4    employees would double in size during a turnaround). Refinery shutdowns often last between six

5    and eight weeks. Bertolotti Depo., 112:15-21; Taylor Depo., 50:8-12.

6         **B.    Plaintiffs' Work for Conam**

7         Plaintiff Gerald Lee was employed as a technician and inspector for Conam (and a

8    predecessor company) from 1992 until 2007, performing x-ray and penetrant testing, welding

9    inspections, and capital project inspections. Lee Depo., 11:18-12:10; 15:16-16:4. From 1999

10   until some time during 2003, Mr. Lee was primarily assigned to work for Conam at the Exxon

11   Mobil refinery in Torrance, California, although he would occasionally be sent to other facilities

12   on a temporary (or "call-out") basis. Lee Depo., 15:7-15. During 2003, Conam assigned Mr. Lee

13   to an inspector position at the BP Carson refinery, in which position he worked until he left the

14   company in 2007. *Id.,* 15:16-24. At Exxon Mobil, Mr. Lee worked a 9/80 alternative workweek

15   schedule; at BP Carson, he regularly worked a 4/10 schedule, though he often worked more than

16   ten hours in a day, especially during turnarounds.[4] *Id.,* 21:5-22:11; 25:11-15; 26:17-25. When he

17   did so, he never received a second meal period. *Id.,* 54:23-55:4. During his tenure at Conam, Mr.

18   Lee also worked at a boiler plant in Pittsburg, California. *Id.,* 30:14-18.

19        Plaintiff Steve Taylor was employed by Conam from January 2004 until November 2005

20   as a Radiographic Technician Assistant (or an "RT Assistant"), in which position he assisted

21   technicians performing x-ray tests for Conam customers. *See* Bertolotti Depo., 75:5-23; Taylor

22   Depo., 10:18-21; 13:16-23. During his employment at Conam, Mr. Taylor was primarily

23   assigned to the BP Carson facility, but he periodically worked at other jobsites on a call-out basis,

24   including a pipeline in Manhattan Beach and a power plant in Long Beach. Taylor Depo. 40:11-

25
26   [4] In a 9/80 schedule, employees work 80 hours over a course of 9 work days—five days of one
     calendar week and four days of the following calendar week. Eight of these days are 9-hour days,
27   and one of them is an 8-hour day. In a 4/10 schedule, employees work four 10-hour days in a
     week.
28

-6-

1   41:9; 45:22-46:13; Complaint at ¶ 7. Mr. Taylor worked a 4/10 schedule at the BP Carson

2   facility, but occasionally worked more than 10 hours. 45:22-46:4; 72:11-22. When he did so, he

3   did not receive a second meal period. *Id.*, 33:19-34:11.

4

5   **C.    Conam Employees Assigned to a Particular Location Worked an Alternative**
       **Workweek Schedule**

6        Throughout the Class Period, Conam employees who were assigned to a particular site—

7   such as the Shell Martinez Refinery, the BP Carson facility, or the ExxonMobil refinery—

8   generally worked an alternative workweek schedule, and were not paid overtime for the hours

9   worked over eight hours in a day. *See* Bertolotti Depo., 54:5-56:15; Lee Depo., 52:5-8; Taylor

10  Depo., 85:25-86:10. Current and former employees confirm that they worked AWS schedules

11  and were not paid overtime when they worked 4/10 schedules. *See* Tindall Employee Decs.,

12  Exhibit N (Ron Mann), ¶¶ 2, 5; Ex. F (Jimmy Cortez), ¶¶ 2, 4, 5; Ex. G (Hector Cruz), ¶¶ 2, 5;

13  Ex. I (Robert Davis) ¶¶ 2, 5; Ex. O (Mike McNevin), ¶¶ 2, 5; Ex. S (Alfred Reeves III), ¶¶ 2, 4, 5.

14  Time records produced by Conam further confirm that employees at the Shell Martinez Refinery,

15  BP Carson, and ExxonMobil worked AWS schedules without being paid overtime pay for the

16  ninth and tenth hours that they worked. *See* Tindall Decl., Ex. O.

17  **D.    Conam Failed to Conduct Valid AWS Elections Prior to June 2008**

18       Conam instituted AWS schedules for its non-exempt inspection and testing employees

19  assigned to worksites throughout California in early 2000 and has maintained such schedules

20  from then until the present. Complaint at ¶ 13. Documents produced in the case, however,

21  indicate that only one AWS election was held by Conam in all of California until June 2008—

22  after this litigation was filed. In February 2000, Conam held an AWS election, in which Conam

23  employees assigned to the Martinez Refinery Company site (also known as "MRC," and currently

24  known as "Shell Martinez") voted on whether to adopt an AWS. *See* Tindall Decl., Ex. C

25  (Exhibit 7 to the Bertoldi Depo), p.1; Tindall Decl., Ex. B (Bertolotti Depo.) 38:24-39:19. The

26  notice to employees concerning the election informed them that the 9/80 and 4/10 AWS were

27  *required* by its contract with Conam's customer: "These Alternate [sic] workweek schedules are

28  a site-specific requirement as stated in our current contract. In order to comply, Conam

1   Inspection is initiating the proposal of these two Alternate [sic] workweek schedules to the

2   employees assigned to this facility." Tindall Decl., Ex. C., p.1. The election was held on

3   February 23, 2000; 17 employees assigned to the MRC voted on whether to approve 9/80 and

4   4/10 alternative workweek schedules,[5] with 16 voting for it and one voting against it. Tindall

5   Decl., Ex. C, p.2; Moscowitz Decl. ¶ 4 and Ex. A.

6        Conam only partially reported the election results to the Department of Labor Statistics

7   and Research (or "DLSR"), as required by Wage Order 16(3)(C)(7).[6] There is no evidence that

8   Conam reported to the DLSR the tally of the vote, the size of the unit, or the nature of Conam's

9   business. Moscowitz Decl., ¶¶ 3-4, Ex. A. The DLSR's website, which identifies AWS elections

10  and results, mistakenly describes the results of this election as a "unanimous" election (without

11  identifying the tally of the vote or size of the unit) that took place in Benicia. *Id.*, Ex. A. Mr.

12  Bertolotti confirmed, however, that the MRC election was the only election that took place in the

13  Benicia area in 2000. *See* Bertolotti Depo., 38:9-14; 38:24-39:4. Although it appears that Conam

14  distributed information about the AWS election to the Conam employees assigned to the MRC

15  (Tindall Decl., Exs. C and D), there is no evidence that Conam distributed any of these materials

16  in Spanish or in any other non-English language, which is required if more than 5% of the

17  affected employees primarily speak that non-English language. *See* Bertolotti Depo., 59:7-17;

18  Wage Order 16(3)(C)(6)(7).

19       At his deposition, Mr. Bertolotti—whom the company designated as the person to testify

20  about all AWS elections held by Conam involving California employees and who identified

21  himself as the person most knowledgeable on this topic (Bertolotti Depo., 14:7-19)—testified that

22  between 2000 and the end of 2007, other than the MRC/Shell Martinez election in February 2000,

23  he did not know of any other AWS elections that Conam held in California. *Id.,* 43:11-18. He

24

25  [5] *See* footnote 4, above.

    [6] *See* 8 CA ADC § 11160(3)(C)(7) ("The results of any election conducted pursuant to this Order
26  shall be a public document and shall be reported by the employer to the Division of Labor
    Statistics and Research within thirty (30) days after the results are final. . . . The report shall
27  include the final tally of the vote, the size of the unit, and the nature of the business of the
    employer.")
28

1    also confirmed that he did not know of any AWS elections that were held prior to 2000. *Id.,*

2    47:20-23. Mr. Bertolotti did, however, state that he was "being told that there was [an election]

3    conducted in Signal Hill" in 2000. *Id.,* 38:7-11. Mr. Bertolotti stated further that, according to

4    the people who told him this information, this election concerned Conam employees working at

5    the BP Carson refinery. *Id.,* 40:22-41:1.

6         No documentary evidence produced thus far, however, indicates that such an election ever

7    occurred. To date, Conam has produced no documents relating to any election held in 2000

8    concerning BP Carson. Tindall Decl., ¶ 10. Mr. Bertolotti testified that he had not seen any

9    documents relating to this election, but he assumes that they exist "somewhere." *Id.* at 41:2-13.

10   Furthermore, there is no evidence that any election concerning the Conam employees assigned to

11   BP Carson was reported to the DLSR, as required by the Labor Code and Wage Order 16. The

12   DLSR's website does not list this election (Moscowitz Decl., ¶ 4 and Ex. A), Mr. Bertolotti did

13   not know if the results of the election were reported to the DLSR (Bertolotti Depo., 41:14-19),

14   and no documents indicating that the results have been reported to the DLSR have been produced

15   thus far in the case. Tindall Decl., ¶ 10.

16        Moreover, there is no evidence that, prior to June 2008, Conam conducted any AWS

17   election at the Exxon/Mobil refinery, the Dow Chemical facility, or the Valero Refineries in

18   either Benicia or Wilmington, or anywhere else in California outside of the Martinez refinery.

19   *See* Moscowitz Decl., ¶ 4; Tindall Decl., ¶ 10; Bertolotti Depo., 43:11-18

20        **E.    Conam Conducted AWS Elections in June 2008**

21        Approximately 9 months after this action was filed, Conam held AWS elections at various

22   sites to which Conam testing and inspection employees have been assigned. *See* Moscowitz

23   Decl., ¶ 5, Ex. A. On June 12, 2008, Conam held an AWS election for employees assigned to

24   Shell Martinez and Dow Chemical in which a total of 17 employees voted. *Id.,* Ex. A; Bertolotti

25   Depo., 43:19-44:19. Also in June 2008, Conam held AWS elections at the BP Carson facility (in

26   which 48 of the 57 employees assigned to the unit voted), at the Exxon Torrance facility (in

27   which approximately a dozen employees voted), Bertolotti Depo, 46:13-47:11; at the Valero

28   Refinery in Benicia (in which 7 employees voted); and at the Valero Refinery in Wilmington, in

1    which 18 employees voted. *See* Moscowitz Decl., Ex. A. In each of these elections, the AWS

2    schedule was approved by the required 2/3 vote. *See id.* A total of 102 Conam employees[7]

3    assigned to these work locations, therefore, participated in the June elections.

4        **F.**    <u>**Conam's Uniform Meal Period Policy**</u>

5          Throughout the Class Period, there was one employee manual in effect at any one time:

6    one manual was in effect from 2003 until 2006 and a second version of the manual was in effect

7    from 2006 to the present. Bertolotti Depo., 68:22:-69:14. Both employee manuals have the

8    identical section concerning meal breaks, which provides as follows:

9            You are encouraged to take a lunch break. However, to ensure that workflow is
10           not disrupted in your area, lunch breaks should be scheduled with your supervisor.
             Lunch is not considered time worked. Additional breaks may be scheduled at the
11           discretion of your supervisor and in accordance with applicable state laws.

12   Tindall Decl., Ex. E. Mr. Bertolotti testified that this written break policy would apply to all

13   California Conam employees for entire Class Period. Bertolotti Depo., 72:10-13; 73:2-23.

14   Plaintiffs and nearly two dozen Class Members have uniformly testified that, although they were

15   provided "*a* lunch break," as indicated in the employee manual, Conam *never* provided a second

16   meal period when they worked more than ten hours in a day. *See* Taylor Depo., 33:19-34:11

17   55:8-22; 86:11-87:6; Lee Depo., 54:23-55:4; Tindall Employee Decl., Exs. A-W (*see e.g.,*

18   Declarations of Yoangel Padilla, ¶ 5; Oscar Vivanco, ¶ 6; Hector Cruz, ¶ 6). Plaintiffs and Class

19   Members were never informed of their right to a second meal period, and they were not aware of

20   this right. Lee Depo., 55:11-13; Taylor Depo., 55:13-16; Tindall Employee Decl., Exs. A-W (*see*

21   *e.g.,* Declarations of Anthony Corrado, ¶ 5; Jimmy Cortez, ¶ 6; Christopher Cutler, ¶ 5).

22       **G.**    <u>**Proposed Class Members' Time Records Confirm that they were not Paid**</u>
23                   <u>**Overtime and Did not Receive Second Meal Periods**</u>

24         The time records of proposed Class Members confirm that they were not paid daily

25   overtime when they were worked alternative workweek schedules and that they virtually never

26   took second meal periods. Throughout the Class Period Conam testing and inspection employees

27   _____

[7] This number is the sum of people who voted in each election: 17 (Shell Martinez/Dow
28   Chemical) + 48 (BP Carson) + 12 (Exxon) + 7 (Valero Benicia) + 18 (Valero Wilmington) = 102.

1    recorded their time on time sheets, which indicate when they checked into the refinery and when

2    they checked out. Bertolotti Depo., 78:1-4; Tindall Ex. F. The employee would also list the total

3    hours worked and the hours to be paid at straight time, overtime (*i.e.,* time and a half), and double

4    time. *Id.* Exhibit 10 to Mr. Bertolotti's deposition (Tindall Ex. F) is a time sheet of Plaintiff

5    Taylor, in which he shows that he checked in at 6:00 in the morning, checked out at 4:30 in the

6    afternoon (a total of ten and a half hours), and was paid for ten hours of work at straight time.

7    Tindall Decl., Ex. F. Exhibit 11 to the deposition (Tindall Ex. G) indicates that Mr. Taylor

8    worked two days in which he checked in at 6:00 a.m., checked out at 6:30 p.m. (a total of twelve

9    and a half hours), and was paid for twelve hours of work each day (some at straight time and

10   some at time and ½). Tindall Decl., Ex. G. As Mr. Bertolotti confirmed, Mr. Taylor's time

11   sheets indicate that he took only one half hour meal period on these days despite working more

12   than 10 hours. Bertolotti Depo., 82:8-11; 84:8-17.

13       These time sheets, and countless more like them that have been produced by Conam,

14   indicate that Conam employees uniformly do not take second meal periods when they work more

15   than ten hours in a day. *See* Tindall Decl., Ex. N. Moreover, timesheets of employees who were

16   assigned to particular locations show that they, like Plaintiffs, they were not paid daily overtime

17   for the 9th and 10th hours worked in a workday. *Id.* at Ex. O, P, Q.

18       **H.    Conam's Payroll Processes were Uniform Throughout the Class Period**

19       Throughout the proposed Class Period, a single payroll company—ADP—has provided

20   all of the payroll records for Conam. Bertolotti Depo., 94:18-95:9. Moreover, Mr. Bertolotti

21   testified that he knew of no differences between the way payroll was processed and paid to

22   employees in Conam's two main California offices, Signal Hill and Benicia. *Id.,* 104:17-105:2;

23   106:1-8. The pay policies were the same throughout California. *Id.,* 106:20-108:7.

24       **I.    Procedural History**

25       On September 25, 2007, Plaintiffs filed a complaint on behalf of a proposed Class of non-

26   exempt Conam employees in on-site inspection or testing occupations between September 25,

27   2003 and the time of judgment, asserting claims for (1) failure to pay overtime wages to its

28   employees who were working alternative workweek schedules; (2) failure to provide second meal

1   periods to the proposed Class Members when they worked more than ten hours in a day;  (3)

2   failure to provide proper itemized wage statements—alleging that Conam failed to accurately

3   state all applicable wage rates and failed to include an additional hour of meal period

4   compensation; (4) waiting time penalties for failure to pay all of its terminated employees all

5   wages they are due at the time of termination; and (5) violations of California Business &

6   Professions Code § 17200 *et seq.*, based on the alleged violations asserted in the other claims.

7           On January 15, 2008, the Court held an Initial Case Management Conference, at which the

8   Court set certain deadlines, including a trial date of March 30, 2009 and a deadline to file class

9   certification of May 30, 2008.  Following the Case Management Conference, Plaintiffs served

10  discovery and attempted to obtain documents from Conam relating to AWS elections held during

11  the Class Period.  *See* Stipulation and Orders Regarding Class Certification Briefing of May 6,

12  2008 (Electronic Filing Document No. 23), p.2, and June 20, 2008 (Doc. No. 27), p. 2.  Because

13  the process of obtaining such documentation took longer than expected, the parties requested that

14  the deadline to file class certification be moved to August 1, 2008.  *See* Doc. No. 27, p.2.  The

15  Court granted the parties' request on June 20, 2008.  *Id.*

16          As indicated above, however, Conam has still produced no documents related to any AWS

17  election other than the election held in February 2003 for the Martinez Refinery Company.  As

18  recently as July 25, 2008, Conam's counsel indicated that Conam was continuing to search for

19  documentation regarding AWS elections, but had yet to locate any.  *See* Tindall Decl., Ex. L

20  (letter of July 25, 2008 from Candace Bertoldi).[8]

21  **IV.    CLASS CERTIFICATION IS APPROPRIATE HERE**

22          **A.    Class Certification Requirements**

23          In order for a case to be certified as a class action, the plaintiff must establish that the four

24  prerequisites of Federal Rule of Civil Procedure 23(a) are met, and that at least one of the bases

25  identified in Rule 23(b) applies.  *See Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186

26  ───────────────

27  [8] Conam's counsel confirmed that if Conam locates any documents after the filing of this brief, they will stipulate to an extension of time for Plaintiffs' to file their reply brief so that Plaintiffs

28  may have time to consider any such documents.  Tindall Decl., ¶ 10, Ex. M.

1  (9th Cir. 2001), *amended*, 274 F.3d 1266 (9th Cir. 2001). Rule 23(a) requires first that the class be

2  sufficiently numerous—that is, the class must be so numerous that joinder of all class members

3  individually is impracticable. Fed.R.Civ.Pro. 23(a)(1). Second, there must be questions of law or

4  fact that are common to the class. *Id.,* 23(a)(2). Third, the claims of the proposed class

5  representatives must be typical of the claims of the class—that is, the named plaintiffs must

6  possess the same interests and have suffered the same injury as the proposed class members. *Id.,*

7  23(a)(3); *see General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982). Finally, the

8  proposed class representatives must be able to fairly and adequately protect the interests of the

9  class members. *Id.* at 23(a)(4).

10  In addition to satisfying Rule 23(a), the plaintiff must demonstrate that one of the grounds

11  of Rule 23(b) is satisfied. The portion of Rule 23(b) applicable here is 23(b)(3), under which

12  class certification is appropriate if (1) the questions of law and fact that are common to the class

13  predominate over questions that affect the individual class members, and (2) a class action is

14  superior to other available means for adjudicating the controversy. *See* Rule 23(b)(3).

15  The plaintiff bears the burden of demonstrating that class certification is appropriate under

16  Rule 23. *See Hawkins v. Comparet-Cassani,* 251 F. 3d 1230, 1237-38 (9th Cir. 2001); *Whiteway*

17  *v. FedEx Kinkos Office and Print Services,* 2006 WL 2642528, **2-3 (N.D. Cal. 2006). The

18  Court has great discretion in determining whether to certify a class. *Vizena v. Union Pac. RR Co.,*

19  360 F.3d 496, 502 (5th Cir. 2004); *Whiteway,* 2006 WL 2642528, *3; *see Cummings v. Connell,*

20  316 F.3d 886, 895 (9th Cir. 2003). "Because the early resolution of the class certification question

21  requires some degree of speculation . . . all that is required is that the Court form a 'reasonable

22  judgment' on each class certification requirement." *In re Citric Acid Antitrust Litig.,* 1996 WL

23  655791, *2 (N.D. Cal. 1996) (Smith, J.). In making this judgment, "the Court may properly

24  consider both the allegations of the class action complaint and the supplemental evidentiary

25  submissions of the parties." *Id.* The Court is obliged to accept as true the substantive allegations

26  that the plaintiffs made in the complaint, but must also consider the nature and range of proof

27  necessary to establish those allegations. *In re Coordinated Pretrial Proceedings in Petroleum*

28  *Prods. Antitrust Litig.,* 691 F.2d 1335, 1342 (9th Cir. 1982).

1   As discussed in sub-sections (B) and (C) below, Plaintiffs here fully satisfy the

2   requirements of Rule 23(a) and (b)(3) as to both the proposed Class of Conam employees

3   working in inspection and testing occupations and the proposed Subclass of those proposed Class

4   Members who were assigned to a particular work location.

5   **B.    Plaintiffs Meets Each of Rule 23(a)'s Requirements**

6   **1.    The Proposed Class and Subclass are Sufficiently Numerous**

7   The numerosity requirement is easily satisfied here. "Generally speaking, courts will find

8   that the numerosity requirement has been satisfied when the class comprises 40 or more members

9   and will find that it has not been satisfied when the class comprises 21 or fewer." *Ansari v. New*

10  *York Univ.*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998); *see Consolidated Rail Corp. v. Town of Hyde*

11  *Park*, 47 F.3d 473, 483 (2nd Cir. 1995) (numerosity is presumed at the level of 40 class members);

12  *Whiteway,* 2006 WL 2642528, *4 (same). A Ninth Circuit case has held that as few as 39 class

13  members may be sufficient to satisfy the numerosity requirement. *Jordan v. Los Angeles County,*

14  669 F.2d 1311, 1319-20 (9th Cir. 1982), *rev'd on other grounds,* 713 F.2d 503 (9th Cir. 1983).

15  Here, the Class size of well over 175 inspection and testing employees in California and

16  well over 100 employees who have been assigned to a particular work location are more than

17  sufficient to establish numerosity in the Class and Subclass. *See* Tindall Decl., ¶ 11; Moscowitz

18  Decl., Ex. A (109 employees currently assigned to particular work locations participated in the

19  June 2008 elections).

20  **2.    Common Issues of Fact and Law Are Present**

21  Under the second prerequisite of Rule 23(a), common questions of law or fact must exist

22  among class members, though the showing needed to satisfy this prerequisite is "minimal." *See*

23  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998); *Tierno v. Rite Aid Corp.*, 2006

24  WL 2533056, *2 (N.D. Cal. 2006) (Henderson, J.). Ninth Circuit courts have construed the

25  commonality requirement "permissively," noting that "[t]he existence of shared legal issues with

26  divergent factual predicates is sufficient, as is a common core of salient facts coupled with

27  disparate legal remedies within the class." *Hanlon,* 150 F.3d at 1019.

28

-14-

1      Plaintiffs readily meet the commonality requirement here because the Class and Subclass

2  share both legal issues *and* a common core of salient facts. As to the Class, the following legal

3  and factual questions are common: (1) whether Conam's meal period policy—which both Dennis

4  Bertolotti and proposed Class Member declarations indicate does not vary at worksites across

5  California (*see* Bertolotti Depo., 72:10-13; 73:2-23; Tindall Employee Dec., Exs. A-W)—

6  discouraged employees from taking second meal periods after they worked ten hours in a day; (2)

7  whether Conam's meal period policy was unlawful under the California Labor Code; (3) whether

8  Conam failed to maintain accurate pay records as a result of its alleged second meal period

9  violations; (4) whether Conam's failure to maintain such accurate records was knowing and

10  intentional; (5) whether Conam is liable for waiting time penalties as a result of its failure to

11  provide second meal periods; and (6) whether Conam's policy of not providing second meal

12  periods constituted an unfair business practice.

13      Similarly, as to the Subclass, common factual and legal questions also exist: (1) whether

14  Conam failed to pay daily overtime pay to its employees assigned to a particular work location

15  who worked more than 8 hours in a day; (2) whether Conam instituted a valid AWS at its work

16  locations in California and, if it did so, (3) when, during the Class Period, any such valid AWS

17  was in effect; (4) whether, as a result of its alleged overtime violations, Conam failed to maintain

18  accurate pay records; (5) whether Conam's failure to maintain such accurate records was knowing

19  and intentional; (6) whether Conam is liable for waiting time penalties as a result of its failure to

20  pay overtime pay to terminated Subclass members; and (7) whether Conam's policy of not paying

21  overtime to its employees assigned to a particular worksite constituted an unfair business practice.

22      These common legal and factual questions are more than sufficient to satisfy Rule

23  23(a)(3) as to both the Class and Subclass.

24        **3.     Plaintiffs have Claims Typical of the Class and Subclass**

25      Typicality focuses on whether the claims of the proposed class representative are similar

26  to, or typical of, the class claims. The purpose of the typicality requirement is to ensure that the

27  class representative is motivated to protect the interests of the class. *Eisenburg v. Gagnon*, 766

28  F.2d 770, 786 (3rd Cir. 1985). "Similar to its interpretation of Rule 23(a)(2) commonality, the

1   Ninth Circuit interprets Rule 23(a)(3) permissively." *Bates v. United Parcel Service*, 204 F.R.D.

2   440, 446 (N.D. Cal. 2001) (Henderson, J.) (citing *Hanlon*, 150 F.3d at 1020); *see Armstrong v.*

3   *Davis*, 275 F.3d 849, 869 (9th Cir. 2001) ("We do not insist that the named plaintiffs' injuries be

4   identical with those of the other class members, only that the unnamed class members have

5   injuries similar to those of the named plaintiffs and that the injuries result from the same,

6   injurious course of conduct"). "The test of typicality 'is whether other members have the same or

7   similar injury, whether the action is based on conduct which is not unique to the named plaintiffs

8   and whether other class members have been injured by the same course of conduct.'" *Hanon v.*

9   *Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), quoting *Schwartz v. Harp*, 108 F.R.D.

10  279, 282 (C.D. Cal. 1985). The Ninth Circuit has stated, "[u]nder [Rule 23(a)(3)]'s permissive

11  standards, representative claims are 'typical' if they are reasonably co-extensive with those of

12  absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

13          Plaintiffs' claims for second meal period violations, overtime pay, itemized wage

14  statement penalties, and waiting time penalties and the claims of the Class and Subclass for these

15  same Labor Code violations all arise from the same course of conduct:  (1) Conam's statewide

16  failure to provide second meal periods when its inspection and testing employees worked more

17  than ten hours in a day, and (2) Conam's practice of maintaining AWS schedules for those

18  inspection and testing employees who were assigned to a particular work location and thereby

19  failing to pay overtime pay for the ninth and tenth hour of each workday.

20          Plaintiffs' action is based on conduct which is not unique to them but which affected all

21  members of the proposed Class and Subclass. Plaintiffs, like all Class Members, were not

22  provided second meal periods when they worked more than 10 hours in a day and were not

23  informed of their rights to take such meal periods. *See* Lee Depo., 54:23-55:4; Taylor Depo,

24  33:19-34:11; *see* Tindall Employee Dec., Exs. A-W (*e.g.*, Declarations of Yoangel Padilla, ¶ 5;

25  Oscar Vivanco, ¶ 6; Hector Cruz, ¶ 6). Similarly, Plaintiffs, like all Subclass Members, worked

26  alternative workweek schedules of ten hours a day, four days per week, and were not paid

27  premium wages for the ninth and tenth hours worked in a day even though no valid AWS election

28  was in effect that would excuse the payment of such daily overtime. *See* Tindall Decl., Exs. P

1   (time sheets of Plaintiff Lee); Q (time sheets of Plaintiff Taylor); *see, e.g.,* Tindall Employee

2   Dec., Exs. N (Ron Mann), ¶¶ 2, 5; Ex. F (Jimmy Cortez), ¶¶ 2, 4; Ex. G (Hector Cruz), ¶¶ 2, 5;

3   Ex. I (Robert Davis) ¶¶ 2, 5; Ex. O (Mike McNevin), ¶¶ 2, 5; and Ex. S (Alfred Reeves III), ¶¶ 2,

4   4, 5.  Moreover, as a result of these violations, both Class and Subclass Members, like Plaintiffs,

5   were not provided proper itemized wage statements, and those Class and Subclass Members who,

6   like Plaintiffs, are former employees were not paid all wages they were due at the time of their

7   termination and thus share claims for waiting time penalties under California Labor Code § 203.

8           Because Plaintiffs' wage and hour claims arise from the same course of conduct as the

9   wage and hour claims of the Class, Plaintiffs' claims are typical of those of the class.  *See e.g.,*

10  *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006) ("[a]t base, it

11  appears that the Named Plaintiffs seek relief based on the same conduct of Defendant:  the failure

12  to pay overtime wages.  Defendant does not contend that the Named Plaintiffs' claims arise from

13  conduct that Defendant directed at them alone").

14

15          **4.      Plaintiffs Will Fairly and Adequately Represent the Class and
                       Subclass**

16          The adequacy requirement turns on whether the plaintiff has interests similar to those of

17  the class members, has the motivation to further the interests of the class, and has retained

18  qualified, competent counsel.  The Ninth Circuit has identified two criteria for determining the

19  adequacy of representation:  "First, the named representatives must appear able to prosecute the

20  action vigorously through qualified counsel, and second, the representatives must not have

21  antagonistic or conflicting interests with the unnamed members of the class."  *Lerwill v. Inflight*

22  *Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (certifying action for unpaid overtime

23  wages); *see Staton,* 327 F.3d at 957 (when considering adequacy, courts consider whether

24  plaintiffs have any conflicts of interests with class members and whether the plaintiffs and their

25  counsel will prosecute the action vigorously on behalf of the class).  Both criteria are met here.

26          First, Plaintiffs Lee and Taylor have shown their ability and willingness to prosecute this

27  action vigorously on behalf of all Conam inspection and testing employees.  They have responded

28  to written discovery, prepared for and sat for their depositions, and assisted counsel throughout

1   the case in the prosecution of the action.  Tindall Decl. ¶ 17.  Plaintiffs have also retained as their

2   counsel experienced class action litigators with extensive background in wage and hour class

3   actions.  *Id.,* ¶¶ 3, 4, 5; Declaration of Ellyn Moscowitz, ¶¶ 2-5.  Plaintiffs' Counsel Steven

4   Tindall and Ellyn Moscowitz have served as lead or co-lead class counsel in multiple

5   employment class actions on behalf of thousands of employees and, in this case, have vigorously

6   prosecuted the claims of Plaintiffs and the proposed Class and Subclass thus far and are prepared

7   to do so through trial.

8        Second, Plaintiffs have no interests that are antagonistic to, or in conflict with, the Class

9   or Subclass.  Plaintiffs' interests here are closely aligned with those of the Class and Subclass

10  because, like other Conam testing and inspection employees, they (1) worked more than ten hour

11  days without receiving second meal periods; (2) worked overtime hours for which they did not

12  receive overtime pay; and (3) have not received proper itemized wage statements.  If Plaintiffs

13  succeed in demonstrating that they and the other Class and Subclass Members were not provided

14  second meal periods and were not paid overtime pay required by California law when they

15  worked 10-hour days, they will all receive overtime pay and compensation for missed meal

16  breaks and itemized wage statement penalties.

17       Because Plaintiffs are motivated and able to fairly protect the interests of all Class and

18  Subclass Members, have retained competent counsel, and have no interests antagonistic to the

19  Class and Subclass, they are adequate under Rule 23(a)(4).

20       **C.     Plaintiffs Satisfy Rule 23(b)(3)'s Requirements**

21       Plaintiffs satisfy Rule 23(b)(3) because (1) common issues of fact and law predominate

22  over issues affecting only individual Class and Subclass members, and (2) a class action is

23  superior to other means available to fairly and efficiently adjudicate this controversy.  Fed. R. Civ.

24  P. 23(b)(3); *see Tierno,* 2006 WL 2535056, *4.

25       **1.     Common Questions Predominate Over Individual Ones**

26       The predominance inquiry "'tests whether proposed classes are sufficiently cohesive to

27  warrant adjudication by representation.'" *Hanlon,* 150 F.3d at 1022 (quoting *Amchem Prods., Inc.*

28  *v. Windsor,* 521 U.S. 591, 623 (1997)).  Certification under Rule 23(b)(3) "is appropriate

1    'whenever the actual interests of the parties can be served best by settling their differences in a

2    single action.'" *Id.* (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

3    *Federal Practice & Procedure* § 1777 (2d ed.1986)). As this Court noted in *Tierno,* there is no

4    precise test to determine whether common issues predominate in a particular case; the Court must

5    instead pragmatically assess the issues involved in the action to determine if the common

6    questions present a "'significant aspect of the case and they can be resolved for all members of

7    the class in a single adjudication'"; if so, "'there is clear justification for handling the dispute on a

8    representative rather than on an individual basis.'" 2006 WL 2535056, at \*5 (quoting *Hanlon,*

9    150 F.3d at 1022) (internal quotation marks omitted).

10           The central factual and legal issues in the case—(1) whether Conam's policy and practice

11    with regard to second meal breaks discouraged or prevented its employees from taking meal

12    periods after they worked more than 10 hours in a day, and (2) whether Conam validly

13    implemented an alternative workweek schedule for its employees who were assigned to work at

14    particular locations—are both susceptible to common proof. On the first issue, Plaintiffs will

15    present (1) evidence that Conam's class-wide policy and practice was to make no effort to inform

16    its employees of their rights to a second meal period; (2) evidence that Conam's class-wide policy

17    and practice was never to ask its employees to waive their rights to a second meal period, either

18    orally or in writing; (3) evidence that on a Class-wide basis, Conam inspection and testing

19    employees virtually never took a second meal break when they worked more than ten hours in a

20    day; and (4) evidence that, despite its knowledge that its employees virtually never took a second

21    meal break, Conam took no steps to address the situation at any of its work locations. After

22    presentation of this evidence—and of Conam's evidence to the contrary—the Court and jury can

23    determine whether Conam's meal period policy and practice discouraged and impeded employees

24    from taking second meal periods under California law.

25           On the issue of whether Conam validly implemented an alternative workweek schedule,

26    Plaintiffs will present (1) evidence that no AWS elections were held at any Conam worksites until

27    June 2008 except at the Martinez Refining Company in February 2000; (2) evidence that the

28    Martinez Refining Company election was invalid under Wage Order 16 because Conam failed to

1    make the required disclosures to the DLSR (*see* Wage Order 16(3)(C)(7)); (3) evidence that the

2    February 2000 election was rendered invalid because the number of employees employed for at

3    least 30 days in the Martinez Refining Company increased by 50% above the number who

4    originally voted in the election—that is, evidence that the number of Conam employees working at

5    the MRC site for at least 30 days increased from 17 to 24 (or 50% above the 16 employees who

6    voted in favor of the AWS (*see* Moscowitz Decl., Ex. A)). Under Wage Order 16(3)(C)(6), such a

7    50% increase in the number of employees employed for at least 30 days would render the February

8    2000 election invalid and require Conam to conduct a new AWS election—which Conam

9    concedes did not happen until June 2008. These issues do not require individual adjudication as to

10   any particular Subclass Member. At a single trial, therefore, the Court and jury can determine

11   whether or not Conam had implemented a valid AWS at any of its work locations.

12        Because these key issues are susceptible to common proof, the Court can therefore resolve

13   significant aspects of this case on a class-wide basis, as well as the following additional common

14   factual and legal issues:

15        • whether Conam failed to maintain accurate pay records as a result of its alleged
            meal period and overtime violations;
16

17        • whether Conam's failure to maintain such accurate records was knowing and
            intentional;
18

19        • whether Conam is liable to its former testing and inspection employees for waiting
            time penalties as a result of its failure to provide second meal periods and its
20          failure to pay overtime; and

21        • whether Conam's policy of not providing second meal periods and of failing to
            pay overtime when employees worked ten-hour days constituted an unfair business
22          practice under California law.

23        Because the issues identified above relate to the overarching questions of whether Conam

24   had an overall policy with regard to meal breaks and alternative workweek schedules—and

25   whether these policies violated California law—the common issues predominate over any

26   individual questions.

27

28

MO        MOTION FOR CLASS CERTIFICATION; MEMO OF Ps & As IN SUPPORT THEREOF

1    Conam will no doubt rely on the recent California Court of Appeal decision in *Brinker*

2    *Restaurant Corp. v. Superior Court*, --- Cal.Rptr.3d ----, 2008 WL 2806613 (July 22, 2008), to

3    argue that Plaintiffs' meal period claim should not be certified. Even if the *Brinker* decision

4    withstands a possible California Supreme Court review, *Brinker* will not substantially assist

5    Conam here. *Brinker* stands for the proposition that employers must "provide" meal periods to its

6    employees and "cannot impede, discourage or dissuade employees from taking meal periods . . .

7    ." *Id.*, 2008 WL 2806613 at *1. *Brinker* distinguished the case before it from *Cicairos v. Summit*

8    *Logistics, Inc.*, 133 Cal.App.4[th] 949 (2005), relied upon by the *Brinker* plaintiffs, by pointing out

9    that "'[t]he defendant in *Cicairos knew* that employees were driving while eating and did not take

10   steps to address the situation. This, in combination with management policies, effectively

11   deprived the drivers of their breaks.'" *Id.* at * 22 (quoting *White v. Starbucks Corp.*, 497

12   F.Supp.2d 1080, 1089 (N.D. Cal. 2007)(emphasis in original). Here, like *Cicairos* and unlike

13   *Brinker* and *Starbucks*, Plaintiffs allege that Conam knew that Class Members were not taking

14   second meal breaks when they worked more than ten hours in a day and failed to take steps to

15   address it.

16   *Brinker* concludes that class certification of the meal period claim in the case was not

17   appropriate because the evidence did not show that Brinker had a class-wide policy that prevented

18   employees from taking meal breaks—indeed, "some employees took breaks and others did not.

19   For those who did not, the reasons they declined to take a meal period requires individualized

20   adjudication." *Id.* at * 23. This is distinguishable from the situation here where Plaintiffs

21   allege—and the evidence suggests—that there *is* a class-wide policy of failing to provide meal

22   breaks: Class Members virtually never took second meal periods, there is no evidence of any

23   steps taken by Conam to address this situation, the employee manual does not mention second

24   meal periods, and Plaintiffs and Class Members testify that they were never told that they were

25   allowed to take second meal periods and, for that reason, they did not take them.

26   Even after *Brinker*, class certification of Plaintiffs' meal break claim is appropriate

27   because, at a Class trial, the Court and jury can determine whether Conam, on a class-wide basis,

28   failed to provide second meal periods and/or impeded Class Members from taking them by

21

1     adopting a uniform policy of not informing Class Members of their rights to second meal periods

2     and by failing to take any steps to see that Class Members took them.

3               **2.**      **A Class Action is Superior to Other Available Means of Resolving this**

4                     **Controversy**

5         Second, the class action device is the superior method for resolving Plaintiffs' claims.

6     When a class-wide adjudication of common issues "will reduce litigation costs and promote

7     greater efficiency, a class action may be superior to other methods of litigation . . . ." *Valentino v.*

8     *Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996). Moreover, "if no realistic alternative

9     exists," class litigation is certainly superior. *Id.,* at 1234-35.

10         A class action here is superior to any available alternatives because it greatly furthers the

11     interests of judicial economy. In the absence of class litigation, individual Conam employees

12     seeking overtime pay for hours worked during ten-hour days would need to repeatedly litigate the

13     same legal and factual issues: whether Conam validly implemented an AWS and whether

14     Conam's uniform second meal policy adequately provided a second meal period. These issues can

15     be adjudicated at a class trial for all proposed Class and Subclass Members.

16         Moreover, a class action is superior to individual actions because individual Conam

17     employees likely lack the resources to pursue individual litigation against a large, well-funded

18     company such as Conam. *See Krzesniak v. Cendant Corp.,* 2007 WL 1795703 (N.D. Cal., June

19     20, 2007), *18 (finding overtime class action superior to multiple individual actions because

20     individual employees may lack the resources to pursue individual litigation against a large entity,

21     and numerous individual suits would result in a great duplication of effort and create the potential

22     for differing outcomes). A class action is also superior to individual administrative proceedings

23     before the California Labor Commissioner. *See Bell v. Farmers Ins. Exchange,* 115 Cal. App. 4th

24     715, 745-746 (2004) (rejecting trial court's holding that the availability of administrative

25     proceedings before the Labor Commissioner precluded a finding of superiority); *Krzesniak,* 2007

26     WL 1795703 at *20 (rejecting argument that administrative proceedings are superior to wage-and-

27     hour class action); *Wiegele v. FedEx Ground Package Sys., Inc.,* 2008 WL 410691, *11 (S.D. Cal.

28     2008) (noting that for individual class members to compel discovery of the defendants' policies

1   would be costly and time consuming; courts, therefore, "often certify class actions when employer

2   wage and hour practices similarly impact a large number of workers").

3        A class action here is the only practical means to provide redress for the scores of Conam

4   inspection and testing employees who are entitled to overtime wages and to compensation for

5   missed second meal breaks but who are afraid to step forward to assert their rights against their

6   current or former employer or who lack the resources to do so. Moreover, it is evident from the

7   proposed class member declarations that the great majority of Conam employees are unaware that

8   they are entitled to a second meal period once they have worked more than 10 hours in a day. *See*

9   Tindall Employee Dec., Exs. A-W.

10        A class trial of the common issues in this case would also be manageable. At a single

11   adjudication, the Court and jury could determine the common factual and legal questions

12   underlying the meal period and overtime claims. If liability were established, the calculation of

13   damages would not be cumbersome: because Conam has extensive time records reflecting when

14   the employees worked ten-hour days without being paid overtime and when the employees failed

15   to take second meal periods after working more than ten hours, there would likely be little dispute

16   as to either the total amount of Conam's liability or any individual employees' entitlement to

17   damages.

18   **V.    CONCLUSION**

19        For the reasons stated above, class certification is warranted because Plaintiffs have fully

20   satisfied the prerequisites of Rule 23(a) and (b). Whether Conam's meal period policy and AWS

21   overtime policy were lawful under California wage and hour law are issues can and should be

22   decided once, in a single court, with all of the facts marshaled by the parties presented to the

23   judge and jury. If Conam is correct—that it provided second meal periods to its testing and

24   inspection employees and implemented a valid AWS schedule throughout the Class Period—it

25   deserves the *res judicata* protection that only a class action can provide. If, however, as Plaintiffs

26   believe the evidence will show, Conam uniformly failed to provide second meal periods and

27   implemented an AWS schedule in worksites across California without conducting valid AWS

28   elections, Conam must be held accountable. The only meaningful way for Conam's employees to

1   hold them accountable—given the difficulties and expenses associated with litigating individual

2   cases against a large, well-funded entity like Conam—is through a class action.

3        Because the class certification criteria have been satisfied, Plaintiffs respectfully request

4   that the Court certify (1) a Class of Conam inspection and testing employees who worked in

5   California at any time from September 7, 2003 to the present and (2) a subclass of these

6   employees who were assigned to a particular worksite at any point during the Class Period.

7

8                                          Respectfully submitted,

9

10  DATED:  August 1, 2008              RUKIN HYLAND DORIA & TINDALL LLP

11                                      By:_____/S/ Steven M. Tindall_____
                                              Steven M. Tindall
12

13  DATED:  August 1, 2008              LAW OFFICE OF ELLYN MOSCOWITZ

14
                                        By:_____/S/ Ellyn Moscowitz_____
15                                      Ellyn Moscowitz

16
                                        Attorneys for Individual and Representative Plaintiffs
17

18

19

20

21

22

23

24

25

26

27

28

                                               24