1  STEVEN M. TINDALL (SBN 187862)
   RUKIN HYLAND DORIA & TINDALL LLP
2  100 Pine Street, Suite 725
   San Francisco, CA  94111
3  Telephone: (415) 421-1800
   Facsimile: (415) 421-1700
4  steventindall@rhdtlaw.com

5  ELLYN MOSCOWITZ (State Bar No. 129287)
   LAW OFFICES OF ELLYN MOSCOWITZ
6  1629 Telegraph Ave, Fourth Floor
   Oakland, California 94612
7  Telephone:  (510) 567-8400
   Facsimile:   (510) 567-8444
8  emoscowitz@moscowitzlaw.com

9  Attorneys for Individual and Representative Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERALD LEE and STEVEN TAYLOR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CONAM INSPECTION AND ENGINEERING SERVICES, INC,<br><br>Defendant. | **CASE NO. 3:07-cv-04956-SI**<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF CLASS CERTIFICATION MOTION**<br><br>**Date:** November 7, 2008 (new hearing date)<br>**Time:** 9:00 a.m.<br>**Courtroom:** 10<br>**Judge:**   Hon. Susan Illston |

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................1

II. COMMON ISSUES REGARDING PLAINTIFFS' MEAL PERIOD CLAIM PREDOMINATE OVER INDIVIDUAL ISSUES ..........................................................3

    A. *Brinker* is Distinguishable ................................................................................3

    B. Conam's Declarations do Little to Undermine Plaintiffs' Evidentiary Showing ................................................................................................................4

    C. The Common Issue of the Legality of Conam's Policy Predominates over Individual Issues .......................................................................................7

III. COMMON ISSUES REGARDING PLAINTIFFS' OVERTIME CLAIM PREDOMINATE OVER ANY INDIVIDUAL ISSUES ....................................................8

    A. The Propriety of Conam's AWS Elections is Susceptible to Common Proof .....................................................................................................................9

    B. The Individual Issues Presented by Conam are Illusory or Insubstantial .....................................................................................................11

IV. CLASS TREATMENT IS THE SUPERIOR METHOD FOR ADJUDICATING PLAINTIFFS' CLAIMS .............................................................13

V. CONCLUSION ...................................................................................................................15

# TABLE OF AUTHORITIES

**CASES**

*Bell v. Farmers Ins. Exchange,* 115 Cal.App.4th 715 (2004) ................................................... 13, 14

*Brinker Restaurant Corporation, et al. v. Superior Court,* 165 Cal.App.4th 25, 80 Cal.Rptr.3d 781 (2008) ............................................................................................... 1, 3, 4

*Day v. NLO,* 851 F.Supp. 869 (S.D. Ohio 1994) ................................................................................ 8

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................................... 4

*Gabriella v. Wells Fargo Financial,* Case No. C 06-4347 SI (August 4, 2008) ............................. 1

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................................... 12

*Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241 (C.D. Cal. 2006) ......................................... 12, 13

*Lamb v. United Sec. Life Co.,* 59 F.R.D. 25 (S.D. Iowa 1972) ........................................................ 7

*Lanzarone v. Guardsmark Holdings, Inc.,* 2006 LEXIS 95785 (C.D. Cal. 2006) .......................... 6

*Lolley v. Campbell*, 28 Cal.4th 367 (2002) ..................................................................................... 13

*Rodriguez v. McKinney,* 156 F.R.D. 118 (E.D. Pa. 1994) ................................................................ 8

*Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474 (E.D. Cal. 2006) ............................. 7, 14

*Sav-On Drug Stores v. Sup. Ct.,* 34 Cal.4th 319 (2004) .............................................................. 8, 13

*Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65 (E.D. Pa. 1975) ..................................... 8

*Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602 (C.D. Cal. 2005) .......................................... 13

**STATUTES**

California Labor Code § 511 ....................................................................................................... 9, 10

**OTHER AUTHORITIES**

*Division of Labor Standards Enforcement Policies and Interpretations Manual* § 56.14 ................................................................................................................................... 10

*Manual for Complex Litigation* (Fourth), Fed. Jud. Center, § 21.222 ........................................... 12

Wage Order 16-2001 ................................................................................................... 2, 4, 9, 13

**RULES**

Fed. R. Civ. Proc. 23(a) ........................................................................................................1

Fed. R. Civ. Proc. 23(b)(3) ....................................................................................................1

## I. **INTRODUCTION**

Class certification is warranted here because Plaintiffs have made the showings required by Rule 23(a) and 23(b)(3). Notably, Defendant Conam does not contest that the proposed Class and Subclass are sufficiently numerous, that Plaintiffs have typical claims, or that Plaintiffs are adequate class representatives. Conam also does not appear to contest that Plaintiffs have shown the presence of common issues of fact and law under Rule 23(a).[1] Conam instead limits its argument to Rule 23(b)(3), asserting that (1) individual issues predominate with regard to Plaintiffs' meal period and overtime claims, and (2) a class action would not be a superior method of adjudication here. Each of these arguments fails.

First, the evidence before the Court indicates that common issues predominate as to both the meal period and overtime claims. With regard to the meal period claim, the California Court of Appeal's decision in *Brinker Restaurant Corporation, et al. v. Superior Court,* 165 Cal.App.4th 25, 80 Cal.Rptr.3d 781 (2008), even if it is not de-published or overturned by the California Supreme Court, does not prevent common issues from predominating. Unlike the plaintiffs in *Brinker*—or the plaintiffs in *Gabriella v. Wells Fargo Financial,* Case No. C 06-4347 SI (August 4, 2008)—Plaintiffs here need not rely on the proposition that an employer must *ensure* that a meal period is taken in order to certify this claim because they have presented substantial evidence that Conam has a class-wide policy of *failing to provide* meal breaks:

(1) Twenty-seven declarants who worked in Conam plants throughout California—including Northern California[2]—testify uniformly that they were never informed of their right to take second meal periods and, for that reason, did not take them;

(2) *None* of Conam's declarants—neither H.R. personnel, nor Conam supervisors, nor proposed class members—testify that anyone at Conam has, at any time, informed Conam's California employees of their rights to take thirty-minute, second meal periods when they work more than ten hours in a day;

---

[1] Although at one point in its brief Conam asserts, "Plaintiffs have failed to satisfy the requirements of Rule[] 23(a) . . ." (Defendant's Opposition to Plaintiffs' Motion for Class Certification ("Opp."), at 12), Conam makes no attempt to support this blanket assertion.

[2] *See* Supplemental Declaration of Steven M. Tindall in Support of Class Certification ("Supp. Tindall Decl."), Exs. B, D, E.

(3) Despite its legal obligation to maintain records of the meal periods taken by each employee,[3] Conam has produced no employee records indicating that *any* employee has *ever* taken a second, 30-minute meal period during the Class Period. Indeed, the voluminous time records that Conam has produced—including the time records submitted in support of its opposition—indicate that employees take only one meal period when they work over 10 hours in a day;[4] and

(4) Only five of Conam's employee declarations indicate that the declarant has ever actually taken a second meal break of any length of time, and only *one* of these five even suggests that the second meal period was the required thirty minutes in length. Notably, however, the time records of this one declarant, Renato Echevarria, undermine his own statements because they do not show a single instance in which he took more than ½ hour for lunch when he worked more than ten hours in a day.[5]

Because the evidence indicates that Conam had a class-wide policy of failing to provide meal periods on a classwide basis, this claim is appropriate for class certification.

With regard to Plaintiffs' overtime claim, Conam attempts to create the appearance of individualized issues by describing various types of Conam employees working at various worksites. Conam's attempt fails, however, because Plaintiffs' overtime claim applies only to one, easily-ascertainable group of Conam employees: employees who were paid according to an Alternative Workweek Schedule (or AWS) and who were therefore not paid overtime pay for the ninth and tenth hours of work in a day. With regard to this Subclass, which can be defined with certainty by reviewing Conam's time and payroll records, only one contested legal and factual question will need to be determined at trial: Did Conam properly implement AWS schedules at its worksites? Because this central, dispositive issue predominates over any possible issues affecting individual Subclass members, certification of the overtime claim is warranted.

Second, Conam's argument that class treatment is not a superior method for adjudicating Plaintiffs' claims fails because courts have rejected the same argument that Conam makes here: that Berman hearings before the California Labor Commissioner are superior to class treatment. Moreover, Conam's assertion that Class and Subclass Members must try numerous issues to

---

[3] Wage Order 16-2001(6)(A)(1).

[4] *See* Declaration of Candace Bertoldi in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification ("Bertoldi Decl."), Exhibit D.

[5] *See* Supp. Tindall Decl., Ex. F.

establish their rights to recover individually is simply a rehash of its argument that individual issues predominate. Conam greatly overstates the complexity of the merits adjudication and underestimates the Court's ability to manage any individual issues through generally accepted trial management techniques.

## II. COMMON ISSUES REGARDING PLAINTIFFS' MEAL PERIOD CLAIM PREDOMINATE OVER INDIVIDUAL ISSUES

Conam raises three arguments against certification of Plaintiffs' meal period claim—each of which fails. First, Conam's argument that *Brinker* forecloses certification of this claim fails because Plaintiffs need not rely on the proposition rejected in *Brinker* that an employer must *ensure* that meal periods are taken. Plaintiffs here present evidence indicating that Conam had an unlawful state-wide policy and practice that impeded its employees from taking second 30-minute meal periods. Second, the evidence before the Court does not compel the conclusion that Conam's meal period policy was lawful, as Conam asserts. To the contrary: scratching the surface of Conam's thin evidentiary showing reveals that Conam has presented little to undermine Plaintiffs' demonstration that, on a class-wide basis, Conam failed to provide second meal periods to its employees. Third, Conam's argument that individual factual issues predominate fails because the critical issue of whether Conam's meal period policy is lawful predominates over the individual issues presented by Conam which, at most, go not to the existence of class-wide liability but to the amount of potential damages.

### A.  *Brinker* is Distinguishable

Conam's reliance on *Brinker* is misplaced. Although *Brinker* stands for the proposition that class certification of a meal period claim is not appropriate when an employer has a policy that *provides* meal periods but does not *ensure* that they are taken, this proposition does not apply if, on a class-wide basis, the employer impedes or discourages its employees from taking meal periods. Indeed, *Brinker* affirms that employers "cannot impede, discourage or dissuade employees from taking meal periods . . . ." *Brinker,* 80 Cal.Rptr.3d at 786. Plaintiffs here seek to establish that Conam in fact had a class-wide policy and practice that impeded its employees from taking 30-minute meal periods. As discussed below in Section III(B), the evidence indicates that

(1) Conam never informed its California employees of their rights to a second, thirty-minute meal period, and (2) employees never, or virtually never, took 30-minute second meal periods.

If, as this evidence suggests, Conam's policy and practice was to impede its employees from taking 30-minute second meal periods by failing to inform them of their rights to such meal periods and by failing to make them available, this policy runs afoul of *Brinker*. Conam asserts without basis that in order for Plaintiffs to succeed in certifying the meal period claim, they must demonstrate in this motion that Conam's meal period policy is unlawful. To the contrary: although Plaintiffs believe they will be able to demonstrate the unlawfulness of Conam's policy— and although the evidence strongly suggests that the policy was indeed unlawful—Plaintiffs need not make that demonstration (and thus establish the key element of Conam's liability) at the class certification stage. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (the question at the class certification stage is not whether the plaintiff will prevail on the merits, but whether Rule 23's requirements are met). Instead, the legality of Conam's meal period policy is a common legal and factual question that is appropriate for class-wide determination.[6]

**B.     Conam's Declarations do Little to Undermine Plaintiffs' Evidentiary Showing**

Although Plaintiffs need not establish the unlawfulness of Conam's meal period policy at this stage, the evidence before the Court strongly suggests it, and Conam's evidence to the contrary does little to undermine Plaintiffs' showing. First, despite its affirmative obligation under Wage Order 16 to maintain records of the meal periods taken by each employee (Wage Order 16-2001(6)(A)(1)), Conam has yet to produce a *single* employee record indicating that a Conam employee has *ever* taken a second, 30-minute meal period during the Class Period. Instead, the thousands of pages of time records that Conam has produced in the case—including records it submitted in support of its Opposition—indicate that employees take only one meal period when they work more than 10 hours in a day. *See* Bertoldi Decl., Ex. D (time records of

---

[6] If the California Supreme Court de-publishes or overturns *Brinker*, Plaintiffs' arguments for certification of the meal period claim become even stronger because the evidence demonstrates that Conam did little if anything to *ensure* that its employees took second meal periods.

Tony Tijerina, Jonathan Bird, Ben Brandt, Jose Fraga, Robert Huetwohl, William Ensign and others). Supp. Tindall Decl., ¶ 8.[7]

    Second, Plaintiffs and all of Plaintiffs' twenty-seven declarants have testified that they were never informed of their right to take second meal periods and, for that reason, did not take them. *See* (previously-submitted) Tindall Employee Decl., Exs. A-W; Supp. Tindall Decl., Exs. A-E.[8] By contrast, *none* of Conam's declarants testify that anyone at Conam has, at any time, informed Conam's California employees of their rights to take thirty-minute, second meal periods when they work more than ten hours in a day. *See* Bertoldi Decl., Exs. E, F, G, I (declarations of Conam management and H.R. personnel); Exs. H, and J through Z (declarations of proposed Class Members). The uniformity of Plaintiffs' testimony and the absence of testimony to the contrary strongly indicate that Conam simply never informed its California employees of their rights to second meal periods under California law. Conam's uniform written meal period policy is not to the contrary: nowhere does the policy advise California employees that they are entitled to a second, 30-minute meal period—it states only that additional breaks "may be scheduled at the discretion of your supervisor and in accordance with applicable state laws." The uniform testimony indicates that Conam left employees in the dark about the state law that applies specifically to them.

    Finally, although Conam attaches eighteen Class Member declarations, these declarations are more remarkable for what they do *not* say than what they do. As noted above, none of them

---

[7] Conam's declarants' assertions that Conam employees do not record on their timesheets when or whether they took a first and second meal break (*see* Declarations Mike Price, ¶ 9; Wendy Myers, ¶ 9) are directly contradicted by the time sheets themselves, many of which indicate the time that employees begin work, end work, and the number of hours worked. *See* Bertoldi Decl., Ex. D. On the great majority of Class Member's timesheets attached as Ex. D to the Bertoldi Declaration, employees recorded that they worked for precisely one half hour less than the total time between when they began and ended work. *Id.* Indeed, testimony by Conam's Rule 30(b)(6) designee on the issue of meal periods confirms that such records indicate that the employee took only one half-hour meal period. *See* previously submitted Declaration of Steven M. Tindall in Support of Class Certification, Ex. B (Bertolotti Deposition), 82:8-11; 84:8-17.

[8] Contrary to Conam's assertions, Plaintiffs' declarants and Plaintiffs worked in Conam plants throughout California—including Northern California. *See* Supp. Tindall Decl., Exs.B, D, E; Tindall Decl., Ex. I (Deposition of Gerald Lee), 30:14-18.

indicates that the employee was ever told of his second meal period rights under California law. In addition, thirteen of the declarations do not indicate that the declarant has ever actually taken a second meal break, though a handful state cryptically that they were "allowed to take" a break. Only five of the declarations (Renato Echevarria, Laine Blanchard, Rick Surber, Brad Carlon, and Jackson Smith) indicate that they were "allowed to take *and took*" a second meal break of any length of time, and only one of these five (Renato Echevarria) even suggests that he took a second meal period that was the required thirty minutes in length. *See* Bertoldi Decl., Exs. J, K, S, X, Y. Plaintiffs' Counsel has reviewed the time records of each of these five declarants, and none of their time records confirm that they took second meal periods. Supp. Tindall Decl., ¶ 7. Moreover, the time records of Mr. Echevarria and Mr. Blanchard affirmatively undermine their own statements because they do not show a single instance in which they took more than ½ hour for lunch when they worked more than ten hours in a day. *Id.* at Exs. F, G.

Because Plaintiffs' evidence on Conam's failure to provide second meal breaks on a class-wide basis is substantial, Conam's reliance on *Lanzarone v. Guardsmark Holdings, Inc.,* 2006 LEXIS 95785 (C.D. Cal. 2006), is misplaced. In *Lanzarone*, the court concluded that the plaintiff had not presented evidence that supported the blanket assertion that the employer had a policy of denying meal and rest periods. Unlike the *Lanzarone* plaintiffs, Plaintiffs here have presented declarations from various Conam worksites throughout California—*including* employees working in Northern California (*see, e.g.,* Supp. Tindall Dec., Exs. B, D, E (Declarations of Marquis S. Worley, Daniel Kelly, and Lukas Owen); *see also* previously-submitted Tindall Employee Decl. Exs. A through W))—that indicate that they were never informed of their rights to second meal periods and that they never received them.[9]

---

[9] Conam's assertions concerning the declarations of Oscar Vivanco and Marisol Camargo do nothing to support its position. Mr. Vivanco accurately testified that he was not paid overtime for the ninth and tenth hours he worked at Conam *when he worked a 4/10 schedule.* Tindall Employee Decl., Ex. V, ¶ 5. The single timesheet included in Bertoldi Decl., Ex. D indicates that during that week in April 2006, he did not work a 4/10 schedule and was not paid based on a 4/10 schedule. Second, Marisol Camargo's testimony about never being informed by Conam that she could take a second meal period fully supports Plaintiffs' showing regarding Conam's class-wide policy. For the past nine years, Ms. Camargo has worked at the BP Carson facility along with proposed Class and Subclass Members. *See* Tindall Employee Decl., Ex. D.

### C. The Common Issue of the Legality of Conam's Policy Predominates over Individual Issues

Conam's third argument against certification of Plaintiffs' meal period claim—that individual issues predominate—is based on the unsupported premise that "Conam's meal period policy was and is lawful." *See* Opp., at 16:6-7. As discussed above, that very issue—the legality of Conam's meal period policy—is a common legal and factual issue central to Plaintiffs' meal period claim that can be determined on a class-wide basis. At a class trial, Plaintiffs will present evidence (including the evidence cited in Section III(B) above) that Conam, on a class-wide basis, failed to provide meal periods to Class Members. Conam will present whatever evidence it has to demonstrate that it did so. At the close of evidence, the jury and Court will determine whether Conam had a class-wide policy and practice of failing to provide second meal breaks. If Plaintiffs succeed, then class-wide liability is established, and the parties proceed to the damages phase.

Assuming Plaintiffs succeed in demonstrating that Conam had a class-wide policy of failing to provide second meal periods, the outside extent of Conam's meal period liability can be determined by examining Conam's time and payroll records to determine whether, and how often, the Class Member worked more than ten hours in a day. Conam may at that point present any evidence that, despite its class-wide policy of failing to provide second meal periods, it actually provided such second meal periods to individual Class Members. The Court and jury may examine such evidence and, if it finds such evidence to be credible, reduce Conam's liability accordingly. If necessary, the Court may use separate judicial or administrative mini-proceedings to decide discrete, individualized issues such as whether a particular class member voluntarily declined a second meal period. *See Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 487 (E.D. Cal. 2006) (a trial court could determine individual entitlement to damages "through separate judicial or administrative mini-proceedings on individualized issues" or special master hearings); *Lamb v. United Sec. Life Co.,* 59 F.R.D. 25, 33 (S.D. Iowa 1972); *Day v. NLO,* 851

1  F.Supp. 869, 874-76 (S.D. Ohio 1994).[10]  In light of the overwhelming evidence indicating that
2  virtually no Class Members knew they were entitled to take second meal periods and thus never
3  actually took them, Plaintiffs do not anticipate that many such individual determinations would
4  need to be made.

5      In short, Conam's argument that individual factual issues predominate fails because the
6  critical issue of whether Conam's statewide policy and practice regarding meal periods is lawful
7  predominates over the individual issues presented by Conam.

**III. COMMON ISSUES REGARDING PLAINTIFFS' OVERTIME CLAIM PREDOMINATE OVER ANY INDIVIDUAL ISSUES**

10      With regard to Plaintiffs' overtime claim, the central, overarching, dispositive issue is
11  whether Conam properly implemented 4/10 and 9/80 Alternative Workweek Schedules ("AWS")
12  at its facilities pursuant to California law.  Indeed, Plaintiffs' entire overtime claim is premised on
13  the proposition that Conam failed to do so and thus failed to properly pay its employees who were
14  paid according to an AWS for the ninth and tenth hours that they worked during a work day.  At a
15  Class trial, the parties will present evidence of whether Conam properly conducted AWS
16  elections prior to instituting alternative workweek schedules at its facilities.  If Conam
17  demonstrates that they did so at one or more facilities, then it will not be liable for daily overtime
18  pay to the Subclass members who worked at any such facility.  If, however, Plaintiffs
19  demonstrate that Conam failed to conduct a proper AWS election at one or more facilities, then
20  Conam will be liable for any overtime that it has not paid to Subclass members who worked more
21  than eight hours in a day at such facilities.

22      Plaintiffs' overtime claim is ideally suited for class treatment because it presents *virtually*
23  *no* contested individual issues.  Unlike misclassification overtime cases, this case involves only

---

[10] As the California Supreme Court has noted, courts seeking to preserve the efficiency and other benefits of class actions routinely fashion methods to manage individual questions, including the use of questionnaires and single-issue hearings. *See Sav-On Drug Stores v. Sup. Ct.,* 34 Cal.4th 319, 339 (2004) (citing *Rodriguez v. McKinney,* 156 F.R.D. 118, 119 (E.D. Pa. 1994) (questionnaire); *Ungar v. Dunkin' Donuts of America, Inc.,* 68 F.R.D. 65, 140 (E.D. Pa. 1975) (single-issue hearings)).  Such techniques can be used here to determine if any individual Class Member was aware of his or her rights to a second meal period and could thereby voluntarily waive it.

time that was worked on the clock and that was duly recorded by Conam's employees. If, therefore, Conam failed to properly institute an AWS, the parties will be able to definitively determine the number of hours of unpaid overtime that Conam owes Subclass members simply by referring to Conam's time and payroll records.

Conam argues against certification by presenting a smokescreen of specious individualized issues—describing various types of Conam employees who work different schedules at Conam's various worksites. Conam's attempt fails, however, because Plaintiffs' overtime claim applies only to one category of Conam employee: employees who, at any time, worked and were paid according to an AWS. Whether an employee worked and was paid according to an AWS will not be a disputed issue because Conam has time and payroll records that definitively show, *as to every testing and inspection employee*, whether and when the employee was paid according to an AWS.[11] Based on the time and payroll records, the parties will therefore be able to stipulate to Subclass membership and even to the precise number of unpaid overtime hours at issue in the case. With regard to this Subclass, the only contested legal and factual question that will need to be determined at trial is whether Conam properly implemented its AWS schedules. Because this central, dispositive issue predominates over any possible issues affecting individual Subclass members, certification of the overtime claim is warranted.

### A.    The Propriety of Conam's AWS Elections is Susceptible to Common Proof

California law defines the circumstances under which an employer may properly institute an AWS in the construction and oil industries pursuant to an AWS election. *See* Cal. Labor Code section 511; Wage Order 16-2001 3(B), (C). Conam has produced no evidence that, prior to June 2008, any AWS election was held at any facility other than Shell Martinez and BP Carson. As

---

[11] A comparison of the time sheets attached as Exhibit P to the Tindall Declaration and those attached as Exhibit D to the Bertoldi Declaration indicates how this determination can be accomplished. The time sheets attached as Tindall Decl., Ex. P, show that during the time periods covered by these sheets, Mr. Lee was working a 4/10 AWS—that is, he was recording as "straight time" the first ten hours worked in a day. *See* Tindall Decl., Ex. P. The time sheets attached as Exhibit D to the Bertoldi Declaration show employees who were *not* working a 4/10 or 9/80 AWS. They were instead recording as overtime hours all hours worked beyond eight in a day.

such, under California law, Conam could not have instituted a proper AWS at any facility other than Shell Martinez and BP Carson prior to June 2008. Whether a valid election was held at either of these two facilities (or both) can be decided once and in a single court.

At a class trial, the parties will present evidence of whether Conam properly established an AWS at these two facilities. Each side will present evidence regarding (1) whether an AWS election was held at all; (2) whether the election was valid under applicable California law; and (3) whether subsequent events—such as a 50% increase in the size of the workforce affected by the AWS above the number who voted in the election—required that a new election be held. *See* Wage Order 16(3)(C)(6).

All three of these issues are susceptible to common proof. Plaintiffs will present evidence that Conam failed to conduct a valid AWS at either Shell Martinez or BP Carson: (1) there are no documents in the case indicating that any election was held at BP Carson prior to June 2008; and (2) the documents relating to the February 2000 election at the Shell Martinez facility indicate that it did not conduct this election properly because it failed to fully report the results to the Department of Labor Statistics and Research and did not send the notice of election to any of its employees in any language other than English. *See* previously-submitted Declaration of Ellyn Moscowitz, ¶¶ 3, 4, Ex. A; Tindall Decl., Ex. B (Bertolotti Depo. 59:7-17). Moreover, Plaintiffs will present evidence that even if the Shell Martinez election were valid initially, it was subsequently rendered invalid by an increase in the number of employees working at the facility. *See, e.g.*, Bertoldi Decl., Ex. E (Declaration of Dennis Bertolotti), ¶ 8.

For its part, Conam will likely assert that it conducted a valid election in 2000 at Shell Martinez and in 1998 at the BP Carson refinery—though the only indication that any election occurred at the BP Carson refinery is declaration testimony by one proposed class member who states that he voted in the election. *See* Bertoldi Decl., Ex. H. Plaintiffs will contest whether this election even occurred, given the absence of any written documentation concerning it, and will contest its validity given that it was conducted in 1998 and was not reported to DLSR. *See* Labor Code section 511; *Division of Labor Standards Enforcement Policies and Interpretations Manual*, section 56.14 (attached as Exhibit H to the Supp. Tindall Decl.). At the close of the

evidence presented by both sides, the Court and jury can determine whether Conam properly instituted an AWS at any facility and, if so, during what time frame. This central legal and factual issue—common to the overtime claims of the entire Subclass—can be determined at a single trial and does not require individual adjudication as to any particular Subclass Member.

**B.     The Individual Issues Presented by Conam are Illusory or Insubstantial**

Conam's arguments concerning supposed individual issues with regard to the overtime claim are based on the misconception that Plaintiffs seek to certify this claim for the entire Class. This is incorrect: Plaintiffs seek certification of this overtime claim only as to a Subclass of employees who worked and were paid according to an AWS. In their opening brief, Plaintiffs defined the Overtime Subclass as Conam employees who were assigned to a particular worksite. In its opposition brief, Conam correctly determined that Plaintiffs' Overtime Subclass is intended to consist of employees who worked an AWS. Opp., at 22:23-24. Defendants' own evidence indicates the general propriety of limiting the overtime Subclass to employees who were permanently assigned to a refinery: As Conam admits, temporary employees and the great majority of "call-out" employees are paid based upon a 5/8 workweek—that is, they are paid overtime for hours worked beyond eight in a day and are *not* paid based on an AWS. *See* Opp., at 8:4; 9:2-3. With one exception, only employees permanently assigned to a refinery at BP Carson or Shell Martinez worked AWS schedules. *See* Opp., at 5:18-21. Conam's evidence indicates that one group of employees not included in Plaintiffs' original overtime Subclass definition should properly be included—call-out employees who worked an AWS.[12]

As such, Plaintiffs have refined the overtime Subclass definition to include all California Conam employees who worked and were paid pursuant to an AWS—that is, all employees, whether permanently assigned to a refinery or who worked on a call-out basis, who worked and were paid pursuant to a 4/10 or 9/80 AWS. Common issues predominate with regard to this Subclass because, as discussed above, their overtime claims all revolve around one central,

---

[12] Conam noted in its opposition that although call-out employees are almost always paid based upon a 5/8 workweek, certain call-out employees working out of the Signal Hill office in the early part of the class period occasionally worked a 4/10 schedule. *See* Opp. at 8:15-20.

1 common legal and factual issue: whether Conam instituted a valid AWS at any facility in
2 California. Moreover, as discussed above, this Subclass is "precise, objective, and presently
3 ascertainable" (*Manual for Complex Litigation* (Fourth), Fed. Jud. Center, § 21.222), because
4 whether an employee worked and was paid according to an AWS can be ascertained from
5 Conam's employment records.

6 Because the overtime claim applies only to this Subclass, the seven issues that Conam
7 asserts must be resolved to determine an employee's entitlement to overtime are either irrelevant
8 or can be easily resolved by reference to Conam's employee records. *See* Opp. at 19:9-19. The
9 employee's payment schedule, worksite, and timing within the class period can all be determined
10 based on the employee records for all Subclass members. Moreover, whether the employee is
11 permanently assigned to a refinery or a call-out employee is not relevant, nor is the type of work
12 that the employee performed. The relevant issue is instead *whether the employee worked and was*
13 *paid according to an AWS*, which can be determined definitively based on Conam's employee
14 records.

15 Conam's reliance on *Jimenez v. Domino's Pizza, Inc.,* 238 F.R.D. 241, 251 (C.D. Cal.
16 2006), is misplaced because *Jimenez* is a misclassification case presenting contested individual
17 issues. The *Jimenez* court determined that whether a manager was entitled to overtime pay
18 depended on the duties the manager performed and the amount of time he or she spent on such
19 duties. *Id.* at 251-52. Such issues—likely to be hotly contested by the parties—required
20 individual inquires. *Id.* at 253 (citing the employer's right to cross examine each manager to
21 determine liability as to that person). Here, no such contested individual issues exist. Based on
22 Conam's payroll records, the parties can determine both whether and when an employee worked
23 and was paid according to an AWS.

24 Because the central issue of the validity of Conam's AWS schedules is susceptible to
25 common proof, and because there are few if any contested individual issues regarding Plaintiffs'
26 overtime claim, common issues regarding this claim predominate over individual ones. *See*
27 *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) (if common issues present a significant
28

aspect of the case that can be resolved for all class members in a single adjudication, there is clear justification for handling the dispute on a representative basis).

## IV. CLASS TREATMENT IS THE SUPERIOR METHOD FOR ADJUDICATING PLAINTIFFS' CLAIMS

Neither of Conam's arguments against superiority is persuasive. First, courts have rejected the argument Conam raises here that individualized Berman hearings before the California Labor Commissioner are superior to class treatment. *See Wang v. Chinese Daily News, Inc.,* 231 F.R.D. 602, 614 (C.D. Cal. 2005) ("courts have not hesitated to certify class actions for wage and hour claims simply because California law provides for administrative relief"); *Bell v. Farmers Ins. Exchange*, 115 Cal.App.4th 715, 745-46 (2004) (affirming trial court's finding that class treatment was superior to Berman hearings). Berman hearings are especially inferior here given that in such a hearing, each individual Subclass Member would need to prove that Conam failed to properly implement an AWS at his or her worksite pursuant to the AWS election procedures outlined in the California Labor Code and Wage Order 16. Even if individual Subclass Members could make such a showing, repeated demonstrations of this common issue would be wasteful and would likely result in inconsistent determinations regarding the propriety of Conam's overtime practices.[13]

Conam's cited authority is distinguishable. *Lolley v. Campbell*, 28 Cal.4th 367, 372 (2002), is not a class action and therefore does not address the issue of whether a Berman hearing is superior to a class proceeding. *Jimenez*, 238 F.R.D. 241, is also distinguishable for the reasons stated above: it is a misclassification overtime case (rather than a case involving an AWS) in which the court determined that the predominating issue was the actual mix of duties that each employee engaged in. *Id.* at 251. In light of the need for such individual inquiries, *Jimenez* concluded that, despite the admitted disadvantages of a Berman hearing (no award of attorneys'

---

[13] *See Sav-On.,* 34 Cal.4th at 340 ("[a]bsent class treatment, each individual plaintiff would present in separate, duplicative proceedings the same or essentially the same arguments and evidence . . . . The result would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants); *Bell,* 115 Cal.App.4th at 745 (class action is superior to "a multiplicity of legal actions dealing with identical basic issues").

1    fees and no right to de novo review by a court), it could be a viable alternative. *Id.* at 253-254.

2    Here, by contrast, no such contested individual issues are present: to establish overtime liability,

3    Plaintiffs need only show that Conam failed to implement a proper AWS schedule—an issue that

4    affects *all* Subclass Members and that can be determined at a single trial—and that they worked

5    an AWS schedule, an issue that can be demonstrated through employee records. In these

6    circumstances, a class proceeding is superior to individual Berman hearings. *See Bell,* 115

7    Cal.App.4th at 745-746.

8    Second, Conam's assertion that a class action is not superior because Class Members

9    would need to try numerous and substantial issues to establish their right to recover individually

10   is simply a rehash of its argument that individual issues predominate over questions common to

11   the Class. With regard to the Overtime Subclass, once class-wide overtime liability is

12   established, the liability to each individual Subclass member will be relatively straightforward to

13   determine and may not even require a trial. Because all of the overtime worked in the case was

14   worked on the clock, Conam's time records and payroll will establish the number of unpaid

15   overtime hours worked by each Subclass Member. Once it is established whether Conam

16   properly instituted AWS schedules, Plaintiffs do not anticipate that there will be many—if any—

17   disputes with regard to the number of unpaid overtime hours worked and the amount of any

18   unpaid overtime pay.

19   Similarly, with regard to the Class, if Plaintiffs demonstrate that Conam had a class-wide

20   policy and practice of failing to provide second meal breaks, then class-wide liability is

21   established. As with the Overtime Subclass, individual liability determinations can be made by

22   examining Conam's time records to determine whether, and how often, the Class Member worked

23   more than ten hours in a day. If, at that point, Conam has evidence that, despite its class-wide

24   policy of failing to provide second meal periods, it actually provided such second meal periods to

25   an individual Class Member, the Court could use separate judicial or administrative mini-

26   proceedings to decide such discrete, individualized issues. *See Romero,* 235 F.R.D. at 487 (a trial

27   court could determine individual entitlement to damages "through separate judicial or

28

administrative miniproceedings on individualized issues" or special master hearings); *see also* the cases cited in Section II(C), above.

## V. CONCLUSION

For the reasons stated above, class certification is warranted as to both the Class and the Overtime Subclass. Plaintiffs, therefore, respectfully request that the Court issue an order certifying (1) a Class of Conam inspection and testing employees who worked in California at any time from September 7, 2003 to the present; and (2) a Subclass of these employees who worked and were paid pursuant to a 4/10 or 9/80 AWS.

Respectfully submitted,

DATED: August 22, 2008        RUKIN HYLAND DORIA & TINDALL LLP


By:_____/s/_____
            Steven M. Tindall

LAW OFFICE OF ELLYN MOSCOWITZ
Ellyn Moscowitz

Attorneys for Individual and Representative Plaintiffs