# EXHIBIT H

Case 3:07-cv-04956-SI     Document 36-4     Filed 08/22/2008     Page 1 of 3

# DIVISION OF LABOR STANDARDS ENFORCEMENT
# ENFORCEMENT POLICIES AND INTERPRETATIONS MANUAL

as a result of the adoption, repeal or nullification of an alternative workweek schedule. (IWC Orders generally, Section 3(B)(4); IWC Orders 4-2000 and 5-2000, Section 3(B)(3); IWC Order 16-2001, Section 3(B)(1)(d)) (O.L. 2002.05.22)

56.11.1  **Unilaterally Imposed Alternative Workweek Schedules.** DLSE has been asked to respond to a number of questions regarding the validity of plans unilaterally instituted by employers which require employees to work regular schedules of more than eight hours in a day. In these situations, no proposed alternative workweek was presented by the employer for adoption by the employees; instead, the employer simply instituted a "regularly scheduled workweek requiring an employee to work more than eight hours in a 24-hour period". (See Labor Code § 500(c) defining "alternative workweek schedule".) The DLSE has opined that while there is no prohibition placed on an employer who would require employees to work extended hours in a workday or workweek so long as the premium is paid on the employee's regular rate of pay for all overtime hours, an employer mandated "alternative workweek" which requires more than eight hours in a workday and reduces the regular hourly pay of the worker in order to escape the obligation of paying a premium for those extra hours is against public policy as announced by the California Legislature. (O.L. 2002.05.22)

56.12  **Employer Must Bear The Cost Of Conducting Any Election In Connection With An Alternative Workweek.** The employer is obligated to bear all of the costs of conducting any election called for in connection with an alternative workweek arrangement. This includes not only the original election proposed by the employer, but any election allowed by Labor Code § 511 or the Orders to decertify or repeal the alternative workweek.

56.13  **Employers Are Prohibited From Intimidating Or Coercing Employees Regarding Elections.** Employers may not intimidate or coerce employees to vote either in support of or in opposition to a proposed alternative workweek. Any discrimination against an employee for expressing opinions or for opposing or supporting the adoption or repeal of an alternative workweek is illegal. Any violation of these rights is subject to Labor Code § 98 *et seq.* (IWC Orders generally, Section 3(C)(8)).

56.13.1  Investigations of allegations involving intimidation, coercion or any other irregularity in the election process are handled pursuant to the procedures set out in Labor Code § 98.7. (See also, Section 56.22 of this Manual)

56.13.2  **Note:** The employer is not prohibited from exercising his or her free speech in connection with the alternative workweek election. So long as the employer does not engage in coercion or intimidation, he/she is not prohibited from expressing an opinion on the alternative workweek.

56.14  **Existing Alternative Workweek Arrangements Adopted Prior To 1998.** Labor Code § 511 provides, *inter alia*, that under certain circumstances Alternative Workweek Arrangements adopted prior to the effective date of the statute will remain valid while others are declared invalid. The IWC adopted these special rules to apply to any Alternative Workweek Arrangement adopted:

# DIVISION OF LABOR STANDARDS ENFORCEMENT
# ENFORCEMENT POLICIES AND INTERPRETATIONS MANUAL

1. In a secret ballot election held pursuant to Orders 1-13 only, and;
2. If the election was held prior to 1998 or conducted since 1998 if the election was held under the rules in effect prior to 1998, and;
3. The election was held before the performance of any work

Alternative Workweek Arrangements meeting these requirements shall remain valid after July 1, 2000, provided that the results of the election are reported by the employer to the Division of Labor Statistics and Research by January 1, 2001, in accordance with the requirements of Section 3(C)(6) of the Orders (Election Procedures). New arrangements must be entered into pursuant to the provisions of Section (C) of the Orders.

56.14.1  **Note:** Alternative workweek arrangements adopted between January 1, 2000 (when AB 60 became effective) and October 1, 2000 (when the new wage orders pursuant to Labor Code § 517 became effective) must have complied with the procedures for adoption of alternative workweek schedules in effect in pre-1998 wage orders. DLSE's position in this matter is based on the language used by the IWC in the Statement As To The Basis included in the Interim Order which states that the Order is consistent with previously published enforcement policies. In addition, the legislative intent which was contained in AB 60 and published in the Labor Code which states, *inter alia*, "Sec. 21. Wage Orders number 1-98, 4-98, 5-98, 7-98, and 9-98 adopted by the Industrial Welfare Commission are null and void, and Wage Orders 1-89, 4-89 as amended in 1993, 5-89 as amended in 1993, 7-80, and 9-90 are reinstated until the effective date of wage orders issued pursuant to Section 517."

56.15  **Special Rules Covering Alternative Workweek Arrangements Under Orders 4- and 5-2001.** Labor Code § 511(g) allowed 12-hour alternative workweeks in the Health Care Industry which had been adopted pursuant to Orders 4 and 5 prior to 1998 or under the rules contained in Orders 4 and 5 effective prior to 1998, to remain in effect until July 1, 2000. The IWC allows these 12-hour Alternative Workweek Arrangements in the Health Care Industry to continue (see IWC Orders 4- and 5-2000, Sections 3(C)(8)). However, the agreement must meet the following criteria:

1. The 12-hour Alternative Workweek was adopted in a secret ballot election held pursuant to the rules in Orders 4 or 5, and;
2. If the election was held prior to 1998 or conducted since 1998 if the election was held under the rules in effect prior to 1998, and;
3. The election was held before the performance of any work, and;
4. The employer makes a reasonable effort to find another work assignment for any employee who participated in the valid election prior to 1998 and who is now unable to work the alternative workweek schedule, and,
5. If, since October 1, 1999, an employer implemented a reduced pay rate for employees choosing to work 12-hour shifts, the employer must pay a base rate to each affected employee in the work unit that is no less than that employee's base rate in 1999 immediately prior to the date of the rate reduction.